Compiler

FILED
SUPERIOR COURT
OF GUAM

'13 AUG 16 PM 2:38

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| MARIA A. GANGE, JESUS CRUZ CHARFAUROS, ANA A. CHARGAULAF, and JESUS G. AGUIGUI, for themselves and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>GOVERNMENT OF GUAM, GUAM ANCESTRAL LANDS COMMISSION by and through its individual Commissioners (for injunctive relief only to prevent a transfer), and DOES One (1) through Three hundred (300), inclusive,<br><br>       Defendants | CIVIL CASE NO. CV 1461-10<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 15th day of February, 2013, for hearing on the Plaintiffs' Motion for Partial Summary Judgment. Attorney Curtis Van de veld represented the Plaintiffs, Assistant Attorney General William Bischoff represented the Defendants, and Attorney Michael Phillips represented applicant for intervention Vicente Crawford. For the reasons set forth below, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment.

//

## I. Background

This summary judgment motion concerns the legal merits of the Plaintiffs' central claim that the enactment of Public Law 30-158 constitutes a governmental taking of their private property without just compensation. The parties do not dispute the material facts, and ask the Court to render a ruling on the dispositive questions of law in this case.

The undisputed facts are as follows. Plaintiffs are beneficiaries of the trust established by 21 GCA § 80104(e) for the benefit of ancestral landowners who, by virtue of continued public use of their ancestral lands, cannot regain title to those lands via the process envisioned by 21 GCA chapter 80. The trust corpus includes Lot Naval Radio Station and Lot Andersen South, two parcels of real property in Tiyan. Public Law 30-158, enacted on July 13, 2010, provided for the transfer of ownership of those two lots from the trust to a smaller group of trust beneficiaries whose ancestral claims include property retained by the Guam International Airport Authority.

The Plaintiffs in this case are members of the larger group of trust beneficiaries, and brought this suit requesting that the Government be enjoined from transferring the lots to the smaller group of beneficiaries, or, in the alternative, that the Government be ordered to give just compensation for the lots. The Plaintiffs ask the Court to adjudge that P.L. 30-158, in extinguishing their interest in the stream of revenues generated by the Tiyan lots, is a constitutionally prohibited taking of their private property.

## II. Analysis

The Court finds that the Plaintiffs, as beneficiaries of the land trust, do indeed have private property rights in the lots and the stream of revenues generated by the lots sufficient to trigger the protections of the Takings Clause.

In order to execute a constitutionally valid taking of private property, the Government must both demonstrate that the taking is for a valid public use and justly compensate the owner of the private property. Here, the Government has done neither, and has thereby run afoul of the Takings Clause. The taking must be enjoined as contrary to the Constitution.

A. Taking

P.L. 30-158 attempts to transfer ownership of the Tiyan lots from the trust to a group of private individuals. This would extinguish the Plaintiffs' beneficial interest in the Tiyan lots, and would therefore clearly be a taking. The Government does not dispute this obvious point, instead focusing on the question of whether the taking is a taking of private property.

B. Plaintiffs' Private Property

The Court next resolves the question of whether the taking envisioned by P.L. 30-158 would constitute a taking of the Plaintiffs' private property. To do so, it resolves the question of whether the Plaintiffs' beneficial interest in the revenues generated by the Tiyan lots is private property within the meaning of the Takings Clause.

The Plaintiffs clearly do not own the Tiyan lots in fee simple. Rather, they are the beneficiaries of a unique trust, born out of an acknowledgment of past and ongoing injustices committed against their ancestors; this trust holds the lots for their benefit. The question before the Court now is whether the Plaintiffs' status as beneficiaries of this trust is enough to grant them a private property interest in the trust corpus sufficient to trigger Takings Clause protection. The Court finds that it is.

The Government makes much of the fact that the properties held in trust were not historically directly owned by the beneficiaries of the trust, asserting that "[t]he plaintiffs have no special historical, private owner, relationship to the assets in the Land Bank Trust" and that

the Plaintiffs "have no stronger connection to the particular lots in the Land Bank Trust than do any other residents of Guam." Opposition to Motion for Partial Summary Judgment, 4. On this basis, the Government claims, the Court should determine that the Plaintiffs have no protectable property rights in the Tiyan lots.

In making these arguments, the Government severely misapprehends the spirit of the law creating the land bank trust and designating its beneficiaries. The special relationship and connection between the Plaintiffs and the trust lands is undeniable. It is a connection born out of the grave injustices suffered by the Plaintiffs and their ancestors at the hands of previous governments that have exercised dominion over Guam throughout its history, and in particular the special injustice suffered by these individuals due to the continuing public benefit use of the properties seized from their ancestors – continuing use which, absent the operation of the trust, would work to deny them any remedy for the uncompensated historical takings. The legislature's enactment of 21 GCA § 80104(e) was an acknowledgment of this connection, and an embodiment of its intent to restore the connection of the Chamorro people to their ancestral lands.

This sacred connection, unique to the Chamorro people, finds no perfect analogue in the case law of American jurisdictions. In this matter of first impression, the Court's analysis is informed not only by persuasive authorities from other jurisdictions, but also by the unique circumstances of this case. The Court considers these circumstances in light of its duty to administer justice and effectuate the law's intent to right the historical wrongs suffered by the Plaintiffs.

The Government reiterates its arguments, rejected by this Court at the Motion to Dismiss stage, that the result of *A.B.A.T.E. of Illinois, Inc. v. Giannoulias*, 929 N.E.2d 1188 (Ill.App.4th

May 3, 2010), would be appropriate here. In *A.B.A.T.E.*, *id.*, an Illinois Appellate Court ruled that the State of Illinois had the power to commandeer and repurpose funds collected from motorcycle registration fees and held in the special legislatively created Cycle Rider Safety Training Fund. At the Motion to Dismiss stage, this Court's analysis was guided by the more relevant and more persuasive cases of *Illinois Clean Energy Community Foundation v. Filan*, 392 F.3d 934 (7th Cir. 2004), and *Thompson v. Kentucky Reinsurance Association*, 710 S.W.2d 854 (Ky. 1986), wherein legislative repurposings of the assets of governmentally-created entities were found to be impermissible takings. The Court still finds better guidance in these cases.

The Government attempts to distinguish *Illinois Clean Energy*, 392 F.3d 934, on the basis that the charitable foundation in that case was a private entity, while the GALC is an entity within the Government. The Government argues that this distinction is relevant because the GALC's status as a governmental instrumentality subjects its assets – even those held in trust pursuant to 21 GCA § 80104(e) – to legislative confiscation. The reality is that the GALC is but a steward of these lands, holding legal title, but bound by law to administer them in furtherance of the interests of dispossessed ancestral landowners like the Plaintiffs. The Court does not agree that the GALC's stewardship of these lands renders the lands "public assets" such that the lands are that subject to legislative repurpose.

Further, the Government concedes that public stewardship of the Tiyan lots is only relevant insofar as no private property rights have vested in the assets. The Government argues that the Plaintiffs' property rights in the revenues generated by the Tiyan lots are not yet vested, and will not vest until the Plaintiffs actually receive some form of money distribution from the trust from revenues generated by the lots. The Court does not agree. The Court finds Judge

Posner's view that "claims of unconstitutional taking are matters of expectation," *Illinois Clean Energy*, 392 F.3d at 937, more convincing. Whether any money has yet been disbursed by the trust to the Plaintiffs is irrelevant to the question of whether the Plaintiffs have private property rights to the fruits of the trust corpus. 21 GCA § 80104(e) created a constitutionally cognizable expectation of just compensation for historical wrongs. That is enough to bring the Plaintiffs within the protection of the Takings Clause.

### C. Public Purpose

Having found that the Plaintiffs have private property rights in the Tiyan lots sufficient to trigger Takings Clause protections against the execution of Public Law 30-158, the Court proceeds to consider whether Public Law 30-158 constitutes a taking for a legitimate public purpose.

The parties agree that the taking would not be for a public purpose, but rather would be a transfer of land from one private entity to another. Though the Court is not bound by the agreement of the parties, the Court agrees with the parties' analysis of this question.

A proposed intervenor, Vicente Crawford, briefed this position during the pendency of his motion to intervene. Though the Court ultimately denied intervention, the Court has examined the proposed intervenor's briefing and remains unpersuaded that the transfer served any valid public purpose. The legislature's stated intent in enacting Public Law 30-158 is "to satisfy the claims of the original and ancestral landowners of Tiyan properties, whose properties were not returned to them and were retained by the A.B. Won Pat International Aiport Authority." This intent to satisfy claims of a small group of private individuals is, in very clear terms, a purely private purpose.

The Court concludes that the taking would not serve any legitimate public purpose, and that injunctive relief is thus the property remedy. *See, e.g., Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 245 (1984) ("the Constitution forbids even a compensated taking of property when executed for no reason other than to confer a private benefit on a particular private party.") The Court also notes that, as the Government points out, the legislature did not budget for the many millions of dollars that would have been necessary to pay just compensation for this taking. This fact also counsels against the imposition of just compensation as a remedy for the taking.

## D. Just Compensation

The parties do not dispute that no compensation would be rendered to the Plaintiffs for the taking; in any event, as detailed above, the parties' preferred remedy and the remedy compelled by law in this case is injunctive relief.

## CONCLUSION

For the reasons set forth above, the Court concludes that Public Law 30-158 constitutes an attempted taking of the Plaintiffs' private property, that this taking would serve no legitimate public purpose, and that no compensation would be rendered to the Plaintiffs for the taking. The Court concludes that the Plaintiffs are entitled to judgment as a matter of law on the First Cause of Action of the First Amended Complaint.

Accordingly, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

//

//

//

The Government of Guam and the Guam Ancestral Lands Commission and the individual Commissioners thereof are ENJOINED from transferring Lot Naval Radio Station and Lot Andersen South, Public Law 30-158 notwithstanding.

IT IS SO ORDERED this 16th day of August, 2013.

HONORABLE ARTHUR R. BARCINAS
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.
Dated at Hagåtña, Guam

AUG 1 6 2013

Cynthia T. Tiong
Deputy Clerk, Superior Court of Guam